# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 10-CR-3055-LRR |
| vs. | **ORDER** |
| JORGE JUAREZ MORALES, | |
| Defendant. | |

_____

## I. INTRODUCTION

The matter before the court is Defendant Jorge Juarez Morales's "Motion for Judgment of Acquittal and for New Trial" ("Motion") (docket no. 77).

## II. RELEVANT PROCEDURAL HISTORY

On December 15, 2010, a grand jury returned a three-count Superseding Indictment (docket no. 2). Count 1 charged Defendant with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. Counts 2 and 3 charged Defendant with distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

From March 28 to March 30, 2011, the court held a jury trial. Attorney Clemens Erdahl represented Defendant. Special Assistant United States Attorney Justin Lightfoot and Assistant United States Attorney John Lammers represented the government. The jury returned verdicts of guilty on all three Counts. *See* Jury Verdict (docket no. 72). The jury also answered three interrogatory forms. With respect to Count 1, the jury found that the conspiracy involved fifty grams or more of actual methamphetamine. *See id.* With respect to Counts 2 and 3, the jury found that Defendant distributed five grams or more of actual methamphetamine. *See id.*

## III. RELEVANT FACTS

At trial, the parties presented the following evidence most relevant for purposes of the Motion:

### A. Defendant

Defendant is an undocumented immigrant from Mexico. Prior to his arrest, he lived in the Coonley Apartments in Hampton, Iowa with his girlfriend and seven-month old child. According to his girlfriend's testimony, he worked at the Ramirez contract farms.

Defendant testified at trial and admitted that he distributed methamphetamine to Martin Rodriguez on May 7 and 12, 2010, but claimed that he did so under duress. He testified that at some point in the beginning of May, 2010, he lent a vacuum cleaner to Luis Rodriguez. When Rodriguez returned the vacuum cleaner, Defendant noticed that it made a strange sound. Defendant opened it up and discovered a strange substance in it. Defendant took the vacuum to Luis Garabito's apartment, where he encountered Martin Gamboa (also known as "Tine") and Juan. Defendant threw the vacuum bag at Juan, at which point, Gamboa pointed a handgun at Defendant. Defendant testified that Gamboa then "told [him] that if [he] didn't do it, [Gamboa] was going to kill [his] family, [and] that [Gamboa] had the money and the power to do that, both here and in Mexico." Defendant understood "do it" to mean sell methamphetamine.

According to Defendant's testimony, he never told anyone, including his girlfriend, work associates, or a police officer with whom he played soccer, about these threats.

### B. Controlled Buys

Special Agent Ryan Moore testified regarding the controlled buys in this case. Moore recruited Martin Rodriguez, a confidential informant he had used in the past, to purchase methamphetamine from Defendant. Rodriguez told Moore that he had purchased one ounce quantities of methamphetamine from Defendant in the past. Rodriguez and Moore agreed to comport with "past practice" and buy one ounce of methamphetamine

2

from Defendant on May 7, 2010. In a series of telephone calls, the recordings of which were admitted as exhibits at trial, Rodriguez and Defendant agreed upon a time and location to meet. Before the transaction occurred, Agent Moore complied with a number of standard procedures to ensure that the controlled buy produced reliable, admissible evidence. For instance, he searched Rodriguez's car and person and provided him with serialized bills totaling $1,750 with which to purchase the methamphetamine. He also placed a wire recording device on Rodriguez. After the controlled buy, Rodriguez gave Moore a baggie containing an ounce of methamphetamine and the recording, both of which were admitted as exhibits at trial.

Moore and Rodriguez conducted a second controlled by on May 12, 2010. Moore testified that he used the same procedures as the May 7, 2010 controlled buy. Just as he did after the first buy, Rodriguez gave Moore a baggie containing an ounce of methamphetamine and the recording after he purchased the drugs from Defendant.

## IV. ANALYSIS

Defendant styles the Motion as a motion for a judgment of acquittal *and* a motion for a new trial. A judgment of acquittal is appropriate when "the evidence is insufficient to sustain a conviction." Fed. R. Crim. Pro. 29(a). In the Motion, however, Defendant does not argue that there was insufficient evidence to support the jury's verdicts. Instead, Defendant argues that the court erred in evidentiary rulings and instructing the jury. These arguments are properly addressed through a motion for a new trial, which allows the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. Rule. Crim. Pro. 33(a). Accordingly, the court addresses the Motion within the new trial framework. A district court is granted broad discretion in considering a motion for a new trial. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006).

Defendant argues that the court erred by: (1) "denying Defendant a theory of defense instruction," (2) "denying Defendant a coercion instruction," (3) "removing the

issue of voluntariness from the jury on Counts Two and Three," and (4) excluding expert testimony. Brief in Support of the Motion ("Def. Brief") (docket no. 77-1) at 4. The court considers these arguments in turn.

### A. *Theory of Defense and Coercion Instructions*

Defendant contends that the court erred in refusing to give a theory of defense instruction and a coercion instruction. Both Defendant and the government appear to address these two arguments as one issue. That is, whether Defendant provided enough evidence to submit a duress or coercion defense to the jury.

"There is no federal statute defining the elements of the duress defense." *Dixon v. United States*, 548 U.S. 1, 4 n.2 (2006). Further, the Supreme Court has not "specified the elements of the defense." *Id*. However, the Supreme Court has presumed the accuracy of the following elements:

> (1) The defendant was under an unlawful and imminent threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) the defendant had not recklessly or negligently placed herself in a situation in which it was probable that she would be forced to perform the criminal conduct; (3) the defendant had no reasonable, legal alternative to violating the law, that is, a chance both to refuse to perform the criminal act and also to avoid the threatened harm; and, (4) that a direct causal relationship may be reasonably anticipated between the criminal act and the avoidance of the threatened harm.

*Id*. Before a defendant is entitled to coercion instructions, he "must introduce sufficient evidence on all elements of the defense[.]" *United States v. May*, 727 F.2d 764, 765 (8th Cir. 1984).

In support of his argument, Defendant cites *United States v. Ceballos*, 593 F. Supp. 2d 1054 (S.D. Iowa 2009) (Pratt, C.J.). This case is not binding on this court. In any event, it is easily distinguished from the instant case. In *Ceballos*, the defendant was charged with aiding and abetting the distribution of methamphetamine by acting as an

interpreter for her boyfriend during two drug transactions. 593 F. Supp. 2d at 1058. At a pre-trial hearing, the defendant testified that her boyfriend "threatened to hit her on both occasions if she did not translate the drug conversations." *Id*. at 1060. She also testified that he had carried out such threats in the past by beating her "with either a belt or a cord whenever she refused his requests, in addition to choking her once when she tried to leave." *Id*. Chief Judge Pratt found that the defendant presented enough evidence to submit a coercion instruction to the jury. The most notable difference between these facts and the instant case is that the threatening individual was present during the criminal activity in *Ceballos*. In the instant case, Martin Gamboa was not present during either controlled buy. In fact, Defendant admitted to being alone on numerous occasions throughout the conspiracy. Accordingly, in this case, both the immediacy element and the requirement that Defendant have no reasonable opportunity to avoid the harm are lacking.

Defendant cites *United States v. Contento-Pachon*, 723 F.2d 691 (9th Cir. 1984), which is also not binding authority. This case is similarly distinguishable. "In *Contento-Pachon*, a possession with intent to distribute case . . . the defendant was in frequent contact with the person making the threats and was informed that he would be under constant surveillance throughout his activities." *United States v. Scott*, 901 F.2d 871, 874 (10th Cir. 1990). The defendant, a native of Columbia who maintained he was coerced into transporting cocaine into the United States, argued that he did not contact authorities, because he feared that police in Columbia were corrupt. *Cotento-Pachon*, 723 F.2d at 693. The Ninth Circuit Court of Appeals held that the jury should have determined whether the defendant's fear of police corruption in Columbia was credible and reasonable under the circumstances, and thus the reason why the defendant did not seek the aid of law enforcement. *Id*. at 695.

In *Scott*, the Tenth Circuit Court of Appeals distinguished *Contento-Pachon* from a case involving a conspiracy to manufacture methamphetamine, and noted that "the record

5

establishes nothing more than an amorphous belief by Scott that police would not act upon information he would provide them. This belief . . . was neither substantiated by the evidence nor defined as to its scope and coverage." *Scott*, 901 F.2d at 874. In the instant case, there is no record of surveillance or even repeated contacts with Martin Gamboa. Furthermore, Defendant's proffered reason for not contacting the authorities is similar to the "amorphous belief" held by the defendant in *Scott*. Defendant claims he was scared to go to authorities because he was in the country illegally. However, Defendant played soccer with a police officer and had told officers in the past that he was in the country illegally and was not arrested or charged.

The court finds this case more similar to *United States v. Neal*, 990 F.2d 355, 358-59 (8th Cir. 1993). In *Neal*, the Eighth Circuit Court of Appeals affirmed the district court's refusal to give a coercion instruction, reasoning that "the defendant had ample opportunity over a period of months to avoid the perceived harm and therefore could not be coerced . . . [the defendant] negotiated with the [undercover agents] over a period of several months, located the supplier, used his own money to purchase the cocaine from the supplier, and made the arrangements for the delivery of the cocaine." *Neal*, 990 F.2d at 358-59. Similarly, in this case, Defendant negotiated drug deals in person and via telephone with Martin Rodriguez. He was alone on multiple occasions and had more than ample opportunity to avoid committing the crimes for which he was found guilty. Accordingly, the court denies the Motion to the extent it requests a new trial based on the court's failure to instruct the jury on the defense of coercion or duress.

### B. Voluntariness

Defendant argues that the court "[took the] issue of voluntariness from the jury." Def. Brief at 4. The court first notes that it could have completely struck all of Defendant's evidence from the jury's consideration. *United States v. May*, 727 F.2d 764, 765 (8th Cir. 1984). "Without proof of all elements [of coercion], the evidence may be

struck." *Id*. In other words, "[i]f evidence is introduced, but it is apparent that all of the requirements of the coercion defense are not addressed, the trial court is not obligated to allow the evidence to remain for consideration by the jury." *United States v. Campbell*, 609 F.2d 922, 924 (8th Cir. 1979).

Defendant's evidence related to coercion was not relevant to whether he committed the substantive offenses in Counts 2 and 3 of the Indictment. *See Dixon v. United States*, 548 U.S. 1, 7 (2006) ("the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully"). This sort of evidence is only relevant to whether a defendant can establish the elements of the affirmative defense of coercion, which were clearly lacking in this case. Accordingly, the court denies the Motion to the extent it requests a new trial based on arguments related to voluntariness.

### C. Expert Testimony

Defendant contends that the court erred in excluding defense expert witness, Arlan Stegen. Prior to trial, the court discussed this issue with defense counsel. Defendant did not list Stegen on his witness list as the Stipulated Discovery Order required (docket no. 9). The court explicitly withheld ruling on whether the expert could testify and urged Defendant to "get [the desired information] in through other witnesses." Defendant did not object to this proposal. In fact, Defendant was able to introduce the desired information through Special Agent Ryan Moore. Accordingly, the court shall deny the Motion to the extent it requests a new trial based on what Defendant characterizes as the "exclusion" of expert testimony.

### V. CONCLUSION

In light of the foregoing, the Motion (docket no. 77) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 23rd day of June, 2011.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA